IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY M. CONNER, M.D., ) | |
| ) | |
| Plaintiff, ) | Misc. No. 20-1420 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| ASSOCIATED RADIOLOGISTS, INC., ) | |
| et. al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Non-party Gary J. Gunnett's ("Mr. Gunnett,") Motion to Quash and/or Protective Order Pursuant to F.R.C.P. 45(d)(3) is granted ("Motion to Quash," Doc. 1). Mr. Gunnett received a subpoena (the "Subpoena") from Plaintiff Dr. Timothy M. Conner ("Plaintiff" or "Dr. Conner") to testify at a deposition and provide documents in relation to an ERISA and employment-related action against Defendants Associated Radiologists, Inc. ("ARI"), Dr. Conner's former employer, among others, pending in the United States District Court for the Southern District of Virginia. See Motion to Quash, ¶2. Mr. Gunnett, who ARI retained for legal advice regarding a defined benefits plan (the "DB Plan" or the "Plan") which is part of the underlying lawsuit, contends that the Subpoena should be quashed under Fed. R. Civ. P. 45(d)(3)(iii) because it requires disclosure of attorney-client privileged matters, and that no relevant exception applies. Id. at ¶¶3, 13.

In response, Plaintiff urges the Court to find that he has shown good cause to preclude Mr. Gunnett or ARI from asserting attorney-client privilege against him, a former shareholder and director, based on law outside of Pennsylvania's (and explicitly rejected by the state) regarding a shareholder's ability to access confidential communications between corporate

1

counsel and the corporation.    Plaintiff Timothy A. Conner's Response to Gary J. Gunnett's Motion to Quash and/or Protective Order Pursuant to F.R.C.P. 45(d)(3) ("Pl. Opp.") at 9-11.  In the alternative, Plaintiff argues that he, as a director during the time in which Mr. Gunnett advised ARI, was a "joint client" and thus ARI cannot assert privilege against him.  Id. at 16.  Plaintiff also argues that, as a beneficiary of the DB Plan, he is entitled access to information regarding the plan because his employer was acting as a fiduciary and prohibited from asserting attorney-client privilege against him, as a beneficiary, on matters related to plan administration.  Id. at 17.  Finally, Plaintiff argues that ARI waived attorney-client privilege regarding termination of the DB Plan by "publishing Mr. Gunnett's legal advice" in meeting minutes, which were available to Plaintiff.  Id. at 20.  The Court will address all of those arguments in turn, beginning with the proper law to apply.

The relevant law regarding privilege is Pennsylvania's. [1]  Contrary to Plaintiff's claims, under Pennsylvania's choice of law analysis, there is no conflict of law to which this Court should apply an interest analysis because "when a sister state's law is unknown or unclear it is presumed to be the same as Pennsylvania's." Melville v. Amer. Home. Assur. Co., 584 F.2d 1306, 1308 (3d. Cir. 1978).  Plaintiff notes that while "West Virginia has not addressed [the issue of whether 'a shareholder of a corporation may overcome attorney-client privilege when seeking to gain access to confidential information if the shareholder shows good cause'] yet," "Pennsylvania has rejected [that] line of cases." Pl. Opp. at 10-11.  Indeed, the Pennsylvania Supreme Court found that "the Garner good cause analysis is inconsistent with the attorney-client privilege under Pennsylvania jurisprudence because it eliminates the necessary

---

[1] Mr. Gunnett does not live or work within 100 miles of the Southern District of West Virginia; and he would comply with the subpoena by participating in the deposition in Pittsburgh, Pennsylvania. Motion to Quash, ¶5.

predictability of the privilege." Pittsburgh History and Landmarks Foundation v. Ziegler, 200 A.3d 58, 80 (Pa. 2019).  While this case was in the context of derivative litigation, the Court finds that the same reasoning applies:

> [W]eighing of the factors would result in current managers and the corporations' attorneys having no meaningful of determining whether their other privileged communications would be later divulged in…litigation discovery.  As a result, corporate management would be less willingly to discuss issues with corporate counsel, and corporate counsel would caution corporate management not to speak with her candidly.  As a matter of simple logic, this will result in corporate managers being forced to act without necessary legal guidance in an already complicated legal environment.  We conclude that this is inconsistent with the revered nature of the attorney-client privilege in Pennsylvania, and the clarity of it, which has been codified by our legislature and applied continuously by our courts.

Id.

Under Pennsylvania law, Plaintiff may not overcome the attorney-client privilege between Mr. Gunnett and ARI based on his status as a former shareholder.[2] Nor does the Court find Plaintiff's arguments that he should be entitled access to these documents based on principles of derivative litigation persuasive.  The court in Ziegler clarified the limited applicability of the ALI Principles Section 7.13, which ultimately is about "judicial procedures for adjudicating motions to dismiss the derivative litigation following management's decision to adopt an independent committee's recommendation to decline to pursue the derivative claims demanded by plaintiffs." 200 A.3d 58 at 76.  Simply put, that situation does not apply here.

 Plaintiff's arguments under Gottlieb v. Wiles, (that a company may not assert attorney-client privilege against a former director because he would have been able to inspect the documents during his tenure as a director) likewise are unavailing.  143 F.R.D. 241 (D. Colo.

---

[2] The Court notes that the sole case Plaintiff cites to support the notion that a corporation's attorney may represent the shareholder and not the company is not persuasive, given that it is out of line with more recent cases and the common view that the entity is the client.

1992). First, the Court notes that there is no clear authority on this point in this Circuit. Second, Plaintiff's cases that cite approvingly to Gottlieb, as he points out, precedes and are contrary to the Pennsylvania Supreme Court's decision in Ziegler. For instance, a more recent case in this Circuit found that former directors may not waive privilege between the corporation and its counsel. See Handy v. Delaware River Surgical Suites, LLC, 2020 WL 3549203, at *1 (E.D. Pa. Feb. 6, 2020) (concluding that when a former director's interests are hostile to the company's, the company "is the sole client that holds the attorney-client privilege" and that the former director "may not obtain or access privileged documents or communications over the objection of current management.").

Next, although Plaintiff argues that ARI was acting as an ERISA fiduciary, and thus cannot assert attorney-client privilege against him on matters of administration, given Plaintiff's role as a plan beneficiary, this does not apply to the process of generally amending or terminating a plan, which is considered a "settlor" act, as opposed to a fiduciary act. The Court is not convinced by Plaintiff's reasoning that terminating the act in the middle of the administration of the plan cannot be considered a "settlor" act—that would make termination impossible as a "settlor" act because after the plan began, anything subsequent would be considered administration of the plan, rendering the distinction of the categories moot. Mr. Gunnett appears to have been retained for the purposes of terminating the Plan, and while he was a consultant for when the plan began, it does not appear that he was involved in the administration of the plan before being hired to assist with the termination process. Pl. Opp. at Ex. H. As such, the Court does not find that Mr. Gunnett and ARI are precluded from asserting attorney-client privilege on communications regarding the termination of the Plan.

4

Additionally, the Court does not find that Mr. Gunnett or ARI waived any privilege by making references to Mr. Gunnett's role or making general statements regarding the potential termination of the Plan in meeting minutes available to Plaintiff.  First, as the Court has previously noted, Pennsylvania's law applies, and the Court of Appeals for the Third Circuit has held that "[w]hen a party discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary." Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1426 (3d Cir. 1991).  Thus, as a matter of law, even if some privilege was waived through these minutes, that does not result in an automatic waiver of all privileged materials regarding Mr. Gunnett's advice to ARI.  However, the Court finds that it does not need to conduct such an analysis, because no waiver exists in the first instance.  Upon examination of the attached minutes, the Court cannot find that any legal communications were waived.[3]

Insofar as Plaintiff argues that not all communications between ARI and Mr. Gunnett were made for the purpose of obtaining legal advice, the Court cannot speculate as to the nature of their communications and whether they were done in anticipation of litigation, or whether any legal advice was intermingled with logistical administrative discussions.  Further, to the extent that Plaintiff argues that "ARI hired Mr. Gunnett…to help it terminate the defined benefit

---

[3] Plaintiff cites to Exhibits H and I to support his argument, which include highlighted language from board meeting minutes that the Court assumes are meant to demonstrate the communications that have been waived.  The Court cannot agree.  Statements such as "[t]he committee approves moving the funds to a money market with no risk because the distribution is expected to be in mid to late 2019," and "[a] motion was made and passed to vote on Termination Scenarios at the November 2018 meeting after distributing information to all board members and giving those who are not planning to be present at the November meeting the option to proxy their vote," are not legal advice. Pl. Opp., Exs. H and I.

5

plan…typically an act performed by the administrator of the plan," then he contradicts his own previous argument that he should be entitled to "communications and materials concerning his representation of ARI in terminating the DB plan," because Mr. Gunnett's actions here would be in a settlor's capacity, and thus an exception to the fiduciary exception.  Pl. Opp. at 22, 17-18.

Finally, since Plaintiff notes that he has withdrawn his request for documents related to legal advice provided by Mr. Gunnett on the matter of termination pay, the Court need not further address that issue.  Id. at 25.

Because Mr. Gunnett has demonstrated that the attorney-client privilege applies to the documents and testimony he would provide, and no waiver exists, Mr. Gunnett's Motion to Quash (**Doc. 1**) is **GRANTED**.

IT IS SO ORDERED.

February 17, 2021                                          s\Cathy Bissoon
                                                           Cathy Bissoon
                                                           United States District Judge

cc (via ECF email notification):

All Counsel of Record